Good morning, Your Honors. I am pleased to report my name is Jim Lonsaga Fee, and I represent the three appellates for cursing these nine consolidated cases. I'd like to use six minutes now and reserve eight minutes per amicus counsel from the D.O.L. and six minutes for rebuttal. We ask the Court to reverse the lower court and join its sister circuits and the overwhelming majority of district courts in accepting the 20% rule. The strong majority rule is consistent with the D.F.L.S.A., D.O.L.'s regulations, opinion letters, amicus briefs, and handbook, as well as common sense. Here, the restaurant appellees urge you to craft new, new-credit jurisprudence, casting aside a reasonable compromise rule, which has been in practice for four years, and a thoughtful body of law developed by dozens of your colleagues at the district and circuit level throughout the country. The question here is whether the worker appellates state a claim by alleging that they engaged in various non-tip generating duties and occupations, and yet were paid $2.13 an hour, where Congress only allows that reduced minimum wage for tipped activity. Well, let me ask you this, which I was confused about. So, the regulation, the 531.56e, the dual job situation, sets out some ways to contemplate that an employee could have two jobs, one a tipped occupation, one not a tipped occupation, and then provides guidance by example as to how you could determine when a person has a tipped occupation and a non-tipped occupation. But when I looked at the last reiteration of your interpretation in the field operations handbook, the O.L.'s interpretation, with a 20% rule in the unrelated, it didn't seem to address the question of how do I tell when an employee has two different jobs? So, help me understand how this sort of minute-by-minute, duty-by-duty, intermingle, it seems more like you have one job that has a range of duties, which the regulation seems to say is not two jobs. So, help me with that. Certainly, thank you. So, the FLSA's very practical statute, it looks to the actual activity of the worker and their job duties, because the problem with just resting on a job title, as the defendants want to do, is that you could call somebody a server and then 90% of the time, or 50% of the time, or 100% of the time, have them scrubbing floors. So, you have to focus on what are the chances... I think they would need two jobs. So, if you have someone, you call them a server, then 90% of their time, they're scrubbing floors, and 10% of the time, they're a waiter. I mean, really, I understand, that's a good way to say, yes, if 90% of your time, you're scrubbing floors, you're a floor scrubber. So, that's not a problem. The problem I have is, you know, I'm sitting 10 minutes, I'm sitting at the counter, and then another 10 minutes, waiting tables, and it's over. So, there's going to be a range of possibilities between 0% and 90% or 100%. And so, we have to provide some kind of guidance. The law has to give some kind of guidance. Employers are entitled to assign in terms of job duties. Workers are entitled to receive in terms of money. So, I think you started the statute, right? It's just that it's a different occupation. I mean, it seems to say a single job. So, if you have an employee engaged in a job, it should get more than $30 a month in tips. If you're a tipped employee, it doesn't talk about duties or range of duties within a single occupation or anything like that. But then, I understand the regulation, which you advise us we should defer to, does contemplate that there could be two separate occupations. And that comes from the statute itself, actually. So, the statute contemplates multiple activities because Congress said a tipped employee is defined as an employee, not just an employee who customarily and regularly gets a certain amount of tips, but an employee who is engaged in an occupation where they customarily and regularly get a certain amount of tips. Oh, that's awesome. As long as it's a job occupation. Thank you, Your Honor. Or duties. And duties. What's the difference? Between occupation and duties. I mean, we know we have an occupational handbook, and it talks about an occupation. I think this is how we normally understand it, and how it's used generally in the statute, that you have an occupation that has a range of duties. And I don't think there's any dispute about having the regulations as an occupation and have a range of duties. So, that I understand. I mean, that's consistent with the regulations. There's another way to look at it, and if you look at the Romulus brief on page 21, they cite Merriam-Webster for the definition of occupation. And they claim that it's unambiguous, but it's interesting because they cite the second definition for job and the principal business of one's life. The first definition, if you go to that link, is the activity in which one engages. So, occupation is an ambiguous term that means what is occupying my time, or what is my career or job. So, do you think that in the FLSA, that if I went through and looked at how the word occupation is used, it would mean activity in which one is engaged at the moment? It can, and maybe you don't know that. Well, I do. It can, but in this context, I'm having trouble seeing how that's what it would mean. Well, I think it would be, the phrase would be a melody if it only means job, because we're already talking about somebody who's in a job. Because it's a different job. It can't be something different. So, to the extent that they're engaged in an occupation that yields tips, and the whole idea is that the tip credit is a benefit for the employer when they get to pay $2 an hour instead of $7.25. So, that's premised on the notion that the employee is going to be able to make back that money, and then so hopefully, in earning tips, they have to be engaged in some kind of activity that's going to generate tips for them. But they don't define that as an occupation where you receive more than $30 a month, and TIPS is not talking about specific duties and saying, your job is work. They want you customarily and regularly receive more than $30 a month, and TIPS doesn't have to define a tipped employee. That is one way of looking at it. I'm trying to stay in the blame line. So, you can read it and say a tipped employee means an employee engaged in activities in which they get these tips. So, an occupation, according to the dictionary, an activity in which one engages. So, the activity is a focus, or you can say the job, and you can use the word job. But I think the notion that's baked into the statute, and then it's in the regulation in 56E, the dual-childhood regulation, and then the interpretations through decades of opinion letters, and the field operations handbook as well, is that you can use occupation, job, activities, duties interchangeably. Well, I thought the regulation talks about a singular job. We have a waitress and says you can have a range of duties. That's different from when you have two jobs. You're a maintenance man, and you're also a waiter. So, the regulation seems to contemplate the singular job may have a range of duties. Some are directly addressing serving, and some are addressing other things. And part of what, I've gone over my time, so I want to use something. I lost the rest, but you're trying to make something. Yeah, so I'll answer this and then sit down. But the 56E talks about those two job titles, but it also talks about the activities in which they're engaged, and it emphasizes that sometimes, or excuse me, part of the time, or occasionally, the waitress is doing these other kinds of jobs, or the short order cook, or the counterman, takes a turn, or does just the work. That's an interesting question I had. So, let's say there's a waiter who spends part of their time being required to cook. And I think there's actually a letter from DOL saying, well, if you're a chef such as doing salad prep and a waiter, then the salad prep is not a tip job. That seems directly contrary to this counterman example, which says it's fine to wait out people behind the counter and cook your own orders, or even take your turn being a cook. Advance a single job with a range of duties. And, but there's a practical emphasis here on the counterman is preparing his own short orders, not any number of orders. Or takes a turn. Or takes a turn, right. So, say maybe he spends two or three hours a day on his turn. Is he a counterman? Would you get a tip occupation? Is he in two separate occupations? Your regulation, the regulation says single occupation. And so, that's ambiguity in the regulation that the DOL has powered efforts to interpret. Is that exactly contrary to the 20% rule in the regulation? No, the 20% rule is just- So, a counterman could only be a short order cook if it was less than 20% of his time. Because they've got to be short orders. He's got to take his turn. But it can't be all day long. So, thank you. Thank you. Good morning, Your Honor. Samantha Quart, Sarah Marcus, I represent the Secretary of Labor. To try to address your question, Judge Okuda, you're correct that the dual jobs regulation leaves some ambiguity. It indicates clearly that an employee can have more than one job with the same employer. And that one can be tipped and one not. You just sent a letter around saying, oh, we don't really know. We don't really know what's included out of the range of duties that a person could have. Well, respectfully, Your Honor, I would say that we don't know. But that it can often be a fact-specific inquiry, depending on the structure of the restaurant or other entity in question. And the way that duties are arranged. I would note to the Court that the FLSA doesn't control how an employer should structure the work of any particular employee. And isn't limiting the range of duties that can be assigned to any worker. It's merely a question of how that work has to be paid. And there are times when the tip credit is permissible, and times when it isn't. And if an employer chooses to structure an employee's work so they're going back and forth between tipped duties and non-tipped duties, there has to be some limit on for which hours the employer can pay. The regulation doesn't say that. So the regulation says, you know, the counterman prepares home-cooked orders, or you can keep insurance short-order cook. So the counterman can work as a cook, and is still considered a tip occupation, being a counterman. So that seems to be contrary to being required to divide big parts out. Who do you work with? Well, Your Honor, what the regulation indicates, and the subsequent interpretations reiterate, is that when you look at a tipped job, there's a distinction between duties that are unrelated to that job, and those that don't generate tips that are related to the job. So you're saying in the case of the waiter, who isn't behind the counter, being a chef is unrelated, but in the case of the counterman, who is behind the counter, being a chef is related. That's based on? Well, it's based on the notion that, well, it's in the regulation, of course, it's noted, but a waiter is someone who performs tip duties in the dining room, is taking orders, is delivering food. Oh, if you're the waiter behind the counter, then it would be okay, is that the case? Well, in a counter situation, if the kitchen is right there, that's different than if the kitchen is in the back of the house and separate from the customers, and so there's a question. Who requests you to say that? If it says you can take a turn as a short-order cook, I presume you could be a short-order cook in any part of the building. Before your turn. Your Honor, I take it to mean someone who's serving at a counter where there's food preparation right there, as distinct from a restaurant where there's like a separate dining room and kitchen. And so the duties are more closely related because they can be intertwined and they occur in the same location. So how does your, the field operation handbook actually help me determine the issue, which is in the total job circulation, which is when does someone have two different jobs? It explains that when someone is performing duties that are unrelated to the tip occupation, those are part of a second non-tip job. And the one that you had, because you don't really define that it's a separate job, because you could be doing some cleaning, you could be doing some straightening, you could be doing some salad prep, so it's not really that it's a separate job, it's just unrelated to the tip job. Is that what you're saying? It's not two separate jobs, it's just the job and other duties that are deemed unrelated? Well, I think your question sort of has the same ambiguity that the regulation does, which is what does it mean to have two different jobs? The goal is, and all the regulations have, maintenance man and waiter. So they do completely different things at different parts of the hotel, I assume. So a maintenance man is doing maintenance and the waiter is being a waiter. The early letters from the Department of Labor talk about different period of time, when only one person is allowed to do it, different ways to show that it's divisible. And that seems to be what the regulation says. Maintenance man also serves as a waiter. They differentiate it from a single job with a range of duties. It's certainly an easier case in a circumstance where the employer has structured the duties such that there's an easy, visible divide, either by shift or by job title, but that's not what's necessary. It's the legal question, which is whether the employer is entitled to the tip credit because the employee has an opportunity to be earned a tip. Is there a dual job situation? Are there two jobs? Yes. The Department has interpreted that to mean that someone is performing duties that are unrelated to the tip occupation, and rather than requiring a certified, it reflects the fact that the employer is the one who controls the employee's tasks and would be incentivized to, rather than separating them out, intermingling them such that it can pay directly only the $2.13 an hour, rather than the full minimum wage, which is what is typically required for someone performing those types of tasks. If there are no further questions, I'll leave this time for the rebuttal. Thank you. May it please the Court. Paul DeCamp of Jackson Lewis for all employer defendants. We'll be arguing for 12 minutes. I'm joined by Mr. Sultan, who will argue for eight, and is subject to the Court's questions. We're both prepared to answer any questions the Court has. Mr. Sultan will try to focus his remarks on the issue of why the dual jobs regulation is not entitled to Chevron deference, why the filled operations handbook is not entitled to power deference, as well as why the Department of Labor's interpretation is impractical, being reported. I think it's important to focus on what we're really talking about here. This is about minimum wage. The tip credit is about making sure that workers receive at least the same protection that they would have if they were simply paid at their cash wage, which would continue to be greater than the minimum wage. This is not about anything more than that. And one of the things to understand is that any employee in the world can be a tipped employee if that employee receives tips directly of $30 a month or it's not limited to any particular set of categories. Employees who have a job where they receive tips of $30 a month or more are tipped employees. The statute says that. Well, they have to be engaged in an occupation, right? So the occupation is one in which you customarily or regularly receive more than $30 a month. Yes, Your Honor, and if the employee has an occupation, a job, where that employee receives $30 a month or more tips, that is a tipped employee under the statute. Well, then how about the dual job, right? Let's assume for a moment that it is entitled to deference. Now, would you argue that that's an unreasonable interpretation of the statute in the brief? If this was looking at a plain procedural irregularity? I think there are two very different aspects to the dual jobs scenario. One where the Department of Labor potentially has some authority to opine and one where it does not in the situation where there are two very distinct non-overlapping jobs as described in the regulation as to the previous questioning, where one job is a 38-tips job and one job is a 14-volts, no tips. I think there is room for the Department to step in and to create those two. So even, so the district court said, well, even in that case, I'm pretty sure it's in the district court's book, but even in that sort of case, so half the week you spend in an un-tipped job and then half the week you spend in a tipped job, we can average the amount over the week as long as it's above minimum. Here are we citing Klinghoffer. I disagree. I don't think that's what the court did here. The court did reference Klinghoffer, but the court also made it very clear that it understood directly that the plaintiff's argument is that if the tip credit is not available for any event in time, then the court would not find that Klinghoffer had been satisfied. So I don't think that Klinghoffer is a part of this case. It was cited below, but I don't think it's essential to the court's ruling. Now I don't know if the court addressed the rest of these relationships, but what do you understand the district court to be doing with Klinghoffer? The court cited Klinghoffer, and then the court noted, well, I mean, I see that as a good part of the decision, but that's the way I read it as a book. It instantly appears in the first part of the discussion where the court sets up the principles of how all assessments are made to compliance on a work-week basis. Then the court moved on into facing the plaintiff's claims. You note that what the plaintiffs were really alleging is that for some of that time, if the tip credit is not available, then there would be an advantage violation. So the court understood that Klinghoffer doesn't necessarily answer the question. So if the, let's say that it's a week that's split, Monday, Tuesday, Wednesday, you're a maintenance worker, Thursday, Friday, you're a waiter. And so you agree that you can't say, well, the Tuesdays you're a waiter, you're making enough money that it covers, you have minimum wage, so there's no wage violation after the first three days. Do you agree that that would be incorrect? If the employee were earning exactly minimum wage in the other hours, then yes. But if the way Klinghoffer works, I think it's a fair reading of Klinghoffer. If an employee earns enough money in day one, two, and three of the week, it's more than cover minimum wage for all the hours worked in the week in any capacity, then there isn't a minimum wage violation. So the tip certificate, Romero says, look at the minimum wage. The employer has an obligation to pay a minimum wage. If the employee is engaged in an occupation, they can get a tip credit and make it up that way. But for those hours where the person is engaged in an un-tipped occupation, he's failing his obligation under the NLSA to pay a minimum wage. And it can't be averaged. Why is Romero wrong? That's not quite what Romero said. What Romero said was, in that instance, the district court had taken all of the cash wages and all of the tips. And so you added those two together. You had to do a Klinghoffer analysis and figure out whether there's a minimum wage. And what the tests are considered was the district court had failed to address whether those tips count as wages for purposes of the tip credit. And because the court had not addressed that, had not considered the plaintiff's arguments in that case, the employer had forfeited the ability to claim the tip credit for the tips. Then there was an incomplete analysis that the court needed to at least have an agreement and consider whether this 20% rule or the dual-tops scenario would limit the employer's ability to take the credit for the tips. That was the district court's mistake in that case. That's different from here. And the reason why Klinghoffer doesn't apply here is because we're not talking about employees. In any of these cases, who receive the cash wage for some of their hours above minimum wage. So it's not an issue. In none of the cases here is the employer trying to average hours that are above minimum wage. It's actually just hours that were paid in the tip credit, where the tip credit is an issue that is simply not a factor in our case. In our case, in all nine of the cases, the employees were paid the tip credit wage for all of the hours that they worked. So the issue is presented squarely. Not as a time-offer issue, but as the issue of whether the employer can take the tip credit for the whole day. And then the possession, the detention, and the claim has nothing to do with Klinghoffer. What it means to be in an occupation, a job, or duties. So, is there a difference between a job and an occupation? There is a difference between an occupation and duties. There's a difference between a job and duties. But the difference between a job and an occupation, I have no idea, nor do anyone has any evidence of anything. It's ambiguous in the sense that it's not defined in the statute. But I think it's also because of the definition of tip to employee, not a term that the court has to, or the department has to, resolve because, again, coming back to the purpose of the tip credit, an employer who has an employee who's earning minimal tips is not going to be able to take much use of the tip credit in any way that leads to some sort of corrective situation because the employee who receives the tips is only going to have an advent of the amount of the tips offset against the minimum wage. So, let's suppose that you're making multiple, just take large instances of these servers, let's suppose you said, we're getting this employee out of his job server, that he's, you know, he's, he stays, he's over here in the bathroom, he's engaged in two different jobs, or he's not working as a server, what is he doing? Now, if what we're talking about is an employee in the same shift doing core activities of their profession, of their job, and also doing activities that aren't part of what is normally associated with that role, and we talk about the funded database, that receives all the time of briefing, well, no, this is cleaning bathrooms, typically cleaning bathrooms is a role of the employee, it is also a role that can be performed by other employees, but in that instance, it's not the employee. He's not working in two different jobs. No, you're right. At some point, you'd be working in two different jobs, do you agree with that? Potentially, yes. So, do you spend half his time doing plumbing in the restaurants? Certainly, and I think you're talking about, again, two very different issues on the issue of, are there two different, non-overlapping jobs that an employee is performing. I do think the department has the room to regulate in that space and to say that the employer can't, because the employee works one day a week in a tip capacity, and the employee worked four days a week in a non-tip capacity, and free all that time. So, that's a lot of employees that are in tip, the employees are on purpose, and I think there needs to be room for that in the department. Why can't the DOL, why can't you, be driving a lot of employee procedures? Because that's a different issue, that's not the issue of, are there two non-overlapping jobs? There's a maintenance man at the end of the restaurant waiter. What we're talking about is jobs that are overlapping, if you think about it, the jobs that have diagrams, that are tasks that may be performed on multiple different types of jobs in a restaurant setting. And I think what the reason why the defined percentage of it doesn't work is because it fundamentally, first of all, it's meant to blow out the thin air, but more importantly, it does not account for two, or even possibly three of the six categories of work that the Congress has already clearly said are tipped by the Congress, and the Senate report that we're sending in the briefing, listed waiters, bellhops, waitresses, countermen, busboys, and service bartenders, et cetera, as examples of tipped employees, the 20% concept, and the types of tip-producing activity, in no respect accounts for service bartenders or busboys, and as discussed in the prior colloquy, it does not account for children. So if the 20% cannot properly sort out who is a tipped employee and who isn't, for two and possibly three of the six categories that the Congress has already said, they've told us that these aren't tipped employees, then it's contrary to the statute, and the statute and the website have to travel over Department of Labor's regulatory activity. Mr. Judge, I was concerned about the constitutional implications of allowing an agency to essentially modify the law through these interpretations, or the case to do so, which is a separation of powers. Do you have anything to say about that? Mr. Judge is correct about that, sir, and our view that it is a significant due process problem, it is a significant separation of powers problem, to have Department of Labor making these up as they go along, or changing position, having a secret... Are they interpreting things as they go along? No, Your Honor. In 2009, they declared that this 20% concept does not work. Six weeks later, they withdrew that. But there's another letter that's still on the books, January 15, not the January 16. If you look over the years, their position is generally consistent. That's not true. There are variations. I mean, there's times when the administration has changed, and when it has changed, but generally it's been pretty consistent. Again, the Barback letter from January 15, 2009, which is still a letter from the Department of Labor, it's still on the books, cited in the briefing, does not apply the 20% standard to the Barback. It says the Barback is an exempt employee without any analysis of the 20% concept. When I look at the letters and the various interpretations, I see movement, incremental movement. And I guess my question is, at what point do you say they've gone too far? I mean, the original letters say two hours of salad prep in the morning is a separate job. And they continue to move it to finally have the 20% rule. At what point do you say they've gone too far? When they differentiate between... sorry, to define two separate, non-overlapping jobs, there's all the maintenance man and the waiter. When they cross the line there, it seems to say, with any zip documentation, we are going to regulate the mix of activities that the employee can perform. I think it's important to step back and recognize in the nine cases here, there's no allegation that any of these plaintiffs have spent even a single one of their shifts not engaged in their core activities in their zip documentation. These were not all servers. They were spending 80% of their time on significant shifts. Do you disagree with the waitress with the two hours the salad prep was in doing chef work? And this is a separate job. I do, because the O-Net database, among other things, we're not supposed to use the O-Net. It's a data point for assessing the reasonableness of the department's activity. This is preparing salads as an activity of the discerning employee. They did in 2009, and the Department of Labor's Employment and Training Administration still touts O-Net on its data products website. They refer to that as, essentially as, they don't use the term co-standard, but does not think that's the case. That's correct. The sub-regulatory guide was in the paper letter issued on January 16, 2009, withdrawn in March of 2009. They did expressly adopt the O-Net standards. I want to make sure that Mr. St. Louis is on time. I think that's fine. Good morning, I'm David Sellman. I'm from Phoenix, Arizona. I'd like to focus first briefly on the fact that the Department of Labor's dual-jobs regulation is not entitled to deference for several decisions. The primary factor there is that the Department of Labor's legal brief on page 16 tries to bolster the deference for its regulation by saying that it was the result of a notice-made comment period. In fact, the proposed notice of rulemaking in the January 10, 1967 Department of Labor Federal Register gave no indication of any consideration whatsoever of any concept of dual-jobs. But something strongly suggested in here is loose with that once the six-year statute of limitations or even challenging times that the EPA has run, we won't hear a procedural challenge to regulation. And this is not a procedural challenge either, but this Court has already held in the billing case that puts law in the third circuit that in fact the Department of Labor field operations network, for example, is not entitled to deference. Well, let's start with the regulation. So if you're having a procedural challenge, then is your argument that it's not a reasonable interpretation of the statute? That's correct. And why is it reasonable? Why couldn't we contemplate that a person could hold two different jobs? Well, a person could hold two different jobs, but in this circumstance, the job of a waiter or waitress is a single job. And what is preeminent over the proposed rulemaking in the final case, no indication whatsoever of where this dual-jobs concept came from, but the preeminent consideration is to congressional intent. And the congressional intent focuses on the occupation and out-of-cookings of the State of the Senate report, which very specifically acknowledges that the job of waiter, waitress, busboy, cameraman, those are the jobs. So the regulation says a dual-job example is a maintenance man in a hotel also serves as a waiter. Now, are you saying that that's contrary to the statute? No, but in this case, the only issue we're dealing with... So we're just talking about the regulation. So if we just focus on the regulation, I want to know if the regulation is an unreasonable interpretation of the statute. In two completely dual occupations. Which is what the regulation says, maintenance man and waiter on two different jobs, so you don't disagree with that. So as far as that goes, you're not saying the regulation is unreasonable? That's correct. What is unreasonable is to parse out the job. So what's unreasonable is to move to field operation handbook? Because the rest of that regulation just says this is distinct from the case where in a single job of waitress she may have a range of activities. So the regulation seems to contemplate that a single job of waitress may have a range of activities. So you don't have an objection to that, correct? That's correct. All of the unused cases fall within a single job. So now let's go to the field operations handbook. So you're saying that that's an impermissible interpretation of the statute or of the regulation? Yes. Well let's start with the regulation because it purports to interpret the regulation. Why is the 20% rule and the man related duties rule inconsistent with the regulation? Because the regulation contemplates that a job of waitress, for example, is an occupation. And people are simply allowed to take due credit for that. There's not a distinction with respect to imposing an arbitrary time limit. And in fact, the Department of Labor has been all over the case in this. It's not been anywhere close to consistent. In fact, the Department of Labor's brief even acknowledges on page 24 that it would claim to have almost in time to be consistent. Well that's euphemism for being inconsistent. It's an alternative fact version of being inconsistent. And the very first opinion under cited by the Department of Labor is the 1980s bill, March 20th, 1980, retired in 502. And it involves a situation of waitresses who, after work hours, clean the salad bar, clean and stock the waitress station, clean and reset the tables, and vacuum the floor. And the Department of Labor said those duties performed after work hours are part of the job of being a waitress. That is the exact opposite position that the Department of Labor and the Planning Service do in this case. And then they neglected to mention in the Department of Labor's brief on the recyclable edge consistency they skipped over the January 15, 2009, FLSC opinion letter, 2009-12, which is discussed on page 39 in our brief from this brief. Michael Johnson mentioned a moment ago that dealt with the position of a barman. A barman is someone who may describe as restocking the bar, ensuring the area is clean and organized, taking classes, taking out trash, and occasionally interacting with a customer that is 100% side work. And the Department of Labor said that's okay. That can be tipped. And why is it evidence of a system where, for example, a barman is performing service across a bar, it can be tipped. But if you're doing something that's side work for a table, it's not tipped. That makes no sense. Some people eat at the bar. Some people eat at the table. That shows how unworkable and impractical this is in reality and why this is not entitled to our difference because of the inconsistency. It would almost be so just like some police departments are running body cams on people. When we have the time to look on a later appointment to try to separate a little bit and make sure how much time is spent walking back and forth with people and calling the suppliers so that the next customer who comes in can be served more effectively. And that would then generate a better tip for that customer. And in fact, the omen published by the Department of Labor, half of the top duties that they list for a waiter or waitress are side work jobs. It's too interrelated to the occupation of being a waiter or waitress. And that was what the Congressional intent was and the whole focus of this is ultimately to get back to the concept of the Congressional intent. And that is that the job of the waiter or waitress is a tipped occupation and there are certainly too many permutations of how this might unfold in the myriad of restaurants.  International House of Medicaid, China. Those are 24-7, 365 operations. The plan is put to a year shift. If it's a waiter, if the next customer to come in is that tipped, what if they're all solo waiters and all five hours of waiting? Is that a good work time? Is that a good time? Or not a good time? It's just impractical to try to implement this kind of regulation. And that's potentially why the Department of Labor has packed it out with more detailed regulations to try to find guidance on this, other than promising on January 16, 2009 that they would issue a new field operations handbook acknowledging that there has been confusion over the issue and then two months later they would issue that. So with that kind of an agency record, the regulation, the field operations handbook is not entitled to deference and we request that this be deemed as recorded by the amicability of the agency. Thank you. Our time for rebuttal. So we've got an ambiguous statute, we've got an interpretation in the regulation, and the regulation must be deferred to unless it is plainly erroneous or inconsistent with 50-60. So the restaurants are proposing they have an idea based on OMAD or they have an idea based on another standard that they would like. The question is not whether their standard is reasonable, the question is whether the DOL's struggling with this over decades is plainly erroneous. And so our deference has been applied by this Court to not just opinion letters, but opinion letters in the farmers case in 2007, amicus briefs as well, which we have here and we had in the 8th Circuit and the 10th Circuit in the Price case and the 3rd case in this Court, agency memoranda, which we don't have here, and fact sheets have been deferred to by the DC Circuit. So there's a lot of informal regulation that happens that's consistent with and stems from an elaboration of regulation that agencies like the DOL are consistently deferred to. Just sort of a side question, which is if we decide that the DOL's interpretation is not entitled to deference for whatever reason, would any of the clients here be able to allege that stating a plausible claim for an LSA liability under the regulation itself as opposed to the interpretation of it? Well, I think yes, but the regulation is espoused as a principle in very specific terms because it's talking about encounterment and specific jobs. So obviously the DOL did not intend at that time and Congress never envisioned that the law would only apply to those particular job types, so you'd have to analogize. And so if you choose to throw out the deferred standard, you still have to come up with a standard for what is a tipped employee engaged in an investigation. So any of your clients, let me put it another way, it was hard to review because there were so many different cases from so many different clients, but I didn't see anything suggesting that the clients had clearly divisible jobs, that they did some hours in the morning of one type of duty and then they performed other duties in the afternoon. So nothing like that. And I'm just wondering if there's any clear division or this intermingling because the DOL's approach is to say, we're going to look at duty by duty and so everything's all intermingled. And that seemed to be what they were alleging. Yes, Your Honor, and I think that's the reality of the work because one of the goals Yes, that's intermingled and not divisible. Yes, because one of the problems that we try to challenge in bringing these cases is the understaffing of a restaurant where they say, we don't really need to hire a janitor because we can have them do that on the side here and there, half an hour here, half an hour there. We can send them into the bathroom every once in a while. We can have them scrub the walls. So we don't need to hire an overnight staff. We can hire three shifts instead of four. And that's exactly what the FLSA is oriented towards. It's not just ensuring a fair wage, but also spreading employment and pushing back on limiting the harm to society of a high unemployment rate. So spreading employment is also part of that. So I'd like to contrast what the DOL has done in its careful struggling with what the Supreme Court observed in Encino where there was a flip-flop during the litigation, Smith-Kline where there was back and forth and unfair surprise to industry. Here we have the for decades. I mean, I have 17 out of 21 of the cases that the courts have acknowledged the 20% rule. So our judges and authority, one of those other four judges has already been reversed, I would argue, by the 7th Circuit. So the clear weight of authority in the courts and the DOL's consistent position has put the restaurant industry on notice that this is a legitimate interpretation of the rule. So I would urge the court to follow the reasoning of its sister circuits in FAST in the 8th Circuit, Driver and Schaefer in the 7th Circuit, Roussel and Montano in the 5th Circuit, and most recently Romero in the 10th Circuit, even Ide in the 11th Circuit, which is more recent than Pallon, both of them just are per curiam. But there are dozens of judges who have acknowledged the legitimacy of the 20% rule, either based on our deference and conventional principles as reiterated in law and health care, most recently by the Supreme Court, or just because it's a reasonable way of parsing these duties and acknowledging the real-life requirements of the 2-credit rule. Thank you, Your Honor. Thank you, counsel. Thank you, counsel. We appreciate your arguments for your defense. This argument is very helpful.
judges: Paez, Ikuta, Faber